A. I. BRAINARD et al.

v.

Frank SCOFIELD, Collector of Internal Revenue.

Civ. A. No. 616.

United States District Court
W. D. Texas, Austin Division.

Dec. 15, 1953.

Tarlton Morrow, Marvin K. Collie, of Vinson, Elkins, Weems & Searls, Houston, Tex., for plaintiffs.

Charles F. Herring, U. S. Atty., Austin, Tex., Andrew D. Sharpe, Ruppert Bingham, Sp. Assts. to the Atty. Gen., H. Brian Holland, Asst. Atty. Gen., for defendant.

RICE, Chief Judge.

This action having been tried by the Court without a jury, the Court hereby makes the following findings of fact and conclusions of law.

## Findings of Fact

### I.

A. I. Brainard and Charles Paggi, both of Beaumont, Jefferson County, Texas, J. L. Shakely and Robert McCoy, both of Tulsa, Tulsa County, Oklahoma, and H. H. Wilson of Houston, Harris County, Texas, are the duly constituted Trustees in liquidation of the Iron Works Company of Beaumont ("Beaumont"), now dissolved. Frank Scofield was at all times here involved, Collector of Internal Revenue for the First District of Texas, and resides in Travis County, Texas. Frank Scofield was the Collector to whom the taxes involved in the action herein described were paid. The cause arises under provisions of the Internal Revenue Code with respect to whether Beaumont is entitled to an excess profits credit carry back from 1946 to 1944.

### II.

Beaumont was duly incorporated under the laws of the State of Texas and had its principal place of business in Beaumont, Jefferson County, Texas. The purpose clause of the Iron Works Company of Beaumont on the date of its incorporation and at all times pertinent was as follows:

> The purpose for which said corporation is formed is the transaction of a manufacturing business, by the manufacture of iron, steel, manganese, coke, copper, brass, lumber and other materials and all, or any, articles consisting or partly consisting of iron, steel, copper, wood or other materials, and all or any products thereof; and the purchase and sale of goods, wares and merchandise used for such business.

Beaumont manufactured oil well drilling and pumping equipment and steel castings. Said corporation was formerly named Beaumont Iron Works Company, its name having been changed on October 30, 1945. With the consent of the requisite number of shareholders of said

corporation, said corporation on November 13, 1945, filed a Certificate of Dissolution with the Secretary of State of the State of Texas. All of the above named persons were directors of said corporation and became the Trustees in liquidation (W. M. Crook of Beaumont, Jefferson County, Texas, who is now deceased, was also a Trustee in liquidation), and as such are authorized to institute the action herein described for the use and benefit of the shareholders of said corporation.

### III.

By agreement dated September 5, 1945, Beaumont sold to American Locomotive Company ("American") all of its inventory of raw materials, work in progress and finished goods, plant site, buildings, and equipment and furniture and fixtures for a total consideration of $330,807.90, as of the close of business on September 30, 1945 and thereby terminated its manufacturing business. This sale agreement provided, among other things, as follows:

"(a) Beaumont agreed to hold American harmless from all loss and claims by reason of a defect in any item.

"(b) Beaumont assumed all liability for renegotiation of sales contracts with the United States Government and for defective material and workmanship with respect to shipments made prior to the close of business on September 30, 1945, and with respect to all work completed prior to September 30, 1945.

"(c) Beaumont remained liable for all sums due and owing under purchase orders or contracts on items delivered prior to closing.

"(d) Any Accounts Receivable before September 30, 1945 would be collected by American for the account of Beaumont but uncollectable accounts would be reassigned to Beaumont.

"(e) Beaumont either had to pay prior to September 30th all of its creditors or deposit in the bank a sum equal to the amount of all unpaid indebtedness. It must deposit cash or United States Tax Notes in an amount equal to Federal Income and Excess Profits Taxes.

"(f) Beaumont had to change its name."

The closing date thereafter was extended to November 3, 1945 and at that time a Closing Agreement and Escrow Contract was entered into between Beaumont and American. In the Escrow Contract it was represented by Beaumont that it had paid and discharged all amounts payable to its creditors except for certain expenses incurred in the usual course of business since September 30, 1945, and certain debts contingent in nature and undetermined in amount, consisting of Federal Income and Excess Profits Taxes, renegotiation of contractual income for 1944 and 1945, professional services, other taxes, severance allowance, traveling expenses in connection with renegotiation, service fees, and travel and other fees in connection with litigation. It was estimated that these items came to a total of approximately $185,000. It was further represented that Beaumont had paid income and excess profits taxes for 1943 and prior years and that the tax returns filed were believed to be correct but certain amounts remained to be paid on such taxes. In consequence of the above representations $130,000 was deposited with the Escrow Bank, together with $55,000 in United States securities in order that American could be protected. The escrowed funds were to be used, insofar as necessary, for the payment of the items set forth above. Before any money could be disbursed by the Escrow Agent, there must be a letter from the Collector of Internal Revenue or the creditor specifying the amount and the basis of the obligation and it had to be approved by American. The settlement of these business matters occurred during 1946. On October 4, 1946 American advised the Escrow Agent that all of the provisions incident to the escrow deposit

had been fulfilled and the escrow account was closed.

### IV.

Three distributions in liquidation of the corporation were made as follows:

(a) The first distribution was authorized at a meeting of the Trustees in liquidation on April 19, 1946, in the gross amount of $595,000.

(b) The second distribution was authorized at a meeting of the Trustees in liquidation on December 10, 1946, for distribution immediately upon cashing of certain United States Treasury Tax Notes. The checks were dated January 15, 1947, in the gross amount of $179,634.95.

(c) The third and final distribution was authorized at a meeting of the Trustees in liquidation on May 18, 1948, in the gross amount of $4,200

### V.

As of January 1, 1946, Beaumont's balance sheet reflected assets of $812,286, including $606,792 cash in banks and on hand and $57,777 in accounts receivable which were collected during the year 1946. The balance of the assets consisted of $122,717 cash and $25,000 United States Treasury Notes Tax Series C held in escrow pending fulfillment of the escrow agreement described in Finding of Fact III.

### VI.

As of January 1, 1946, Beaumont's balance sheet showed liabilities of $36,248, and that such liabilities were liquidated during 1946.

### VII.

Beaumont had gross revenue of $393.12 and expenses of $6,213.04 for the calendar year 1946.

### VIII.

During 1946 the Bureau of Internal Revenue audited the income tax returns for Beaumont for 1943, 1944 & 1945 and it was not until October 1946 that Beaumont was advised as to its tax liability for these years. This determination was a prerequisite to the termination of the Escrow Agreement.

### IX.

The Federal Government had a disputed claim against Beaumont for renegotiation of profits of a maritime contract that Beaumont had had with the Federal Maritime Commission. The matter involved was partly the preinspection fee on equipment that Beaumont manufactured during the war. Twenty Thousand ($20,000) Dollars was set aside for such renegotiation. In 1946 this and other renegotiation matters were renegotiated at length, and finally approximately $18,000 was paid to the Federal Government in settlement of such claims.

### X.

Beaumont owned Excess Profits Tax Refund Bonds in the sum of approximately $15,000 on which it was able to collect after long, detailed negotiations in August, 1946.

### XI.

In 1946 Beaumont was claiming refunds on its Income and Excess Profits Taxes for 1943. It was not until 1948 that Beaumont received the money on its claims for tax refunds and the Federal Government at that time repaid too much money and the plaintiffs had to return part of this to the Federal Government.

### XII.

Beaumont had on hand small sums of money owing to approximately 298 former employees who could not be located after diligent effort in 1946. The monies owed these employees were paid over by resolution of the Trustees, dated December 10, 1946, to the Y.M.C.A. under an agreement that if any of the employees claimed the money the Y.M.C.A. was to pay them.

### XIII.

Shortly after the terms of the Escrow Agreement with American had been carried out, the plaintiffs as Trustees in liquidation assembled from their respective homes over the country to make final

liquidating distribution on December 10, 1946. At that time it was discovered that the bonds which the Trustees held had to be sent to Washington to be redeemed and liquidating distribution could not be paid until the bonds were redeemed. This money was finally received from the Federal Government in January 1947 and the next liquidating distribution on Janaury 25, 1947.

## XIV.

The Trustees (plaintiffs herein) in liquidation made every effort to close the liquidation of Beaumont as speedily as possible. They had been advised by a national accounting firm (the regular tax accountants of Beaumont) that they were not entitled to any excess profits credit to carry back from 1946 to 1944 in the opinion of such accountants. It was not until February 1947 that such accounting firm contacted the Trustees and advised them that they were entitled to such refund and that therefore the claim for refund should be filed.

## XV.

■ The period of time taken for handling the affairs of Beaumont was reasonable, necessary and not excessive. Necessarily Beaumont was a continuing corporation of substance and served a real, bona fide corporate purpose during the year 1946. Beaumont was engaged in an orderly, necessary and expeditious winding up of its affairs during 1946.

After the sale to American, described in Finding of Fact III, was effective on November 3, 1945, Beaumont discontinued all business except that incident to an orderly liquidation of its affairs, including that business required in the light of the contract so made with American.

## XVI.

■■ The annual accounting period of Beaumont was the calendar year. Beaumont's income tax and excess profits tax returns were timely filed. Under Section 710 of the Internal Revenue Code, 26 U.S.C.A. Excess Profits Taxes, § 710, page 106, Beaumont had an excess profits credit carry back from 1946 to 1944 in the amount of $84,758.83 which entitled Beaumont to a refund of excess profits taxes of $18,836.20 for 1944. A claim for refund of this amount was duly and timely filed by Beaumont and erroneously rejected by the Commissioner of Internal Revenue.

## XVII.

The assessment complained of by the plaintiffs in this cause was illegal and erroneous and resulted from errors of the Commissioner of Internal Revenue and the claim for refund should be granted.

## XVIII.

There was probable cause for the acts done by the defendant in collecting said taxes, acting pursuant to the direction of the Commissioner of Internal Revenue.

### Conclusions of Law

## I.

I conclude that the Court has jurisdiction of both the parties and the cause of action.

## II.

I conclude that the Commissioner of Internal Revenue erred in rejecting the claim for refund and that the plaintiffs are entitled to stipulated excess profits credit carry back from 1946 to 1944.

## III.

I conclude that the plaintiffs are entitled to judgment in the amount of $18,836.20 with interest thereon as provided by law and costs of this action as provided by law.

## IV.

It Is accordingly Ordered, Adjudged and Decreed that the plaintiffs, A. I. Brainard et al., as liquidating trustees of the Iron Works Company of Beaumont, now dissolved, do have and recover of and from defendant, Frank Scofield, formerly the Collector of Internal Revenue for the First District of Texas, Austin, Texas, the sum of $18,836.20 with interest thereon as provided by law, together with their costs as provided by law.